IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DR. FLORA MOSAKA-WRIGHT,

        Plaintiff,                      11cv1139
                                          **ELECTRONICALLY FILED**
        v.

LAROCHE COLLEGE,

        Defendant.

**MEMORANDUM OPINION RE: DEFENDANT'S
MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 32 and 40)**

**I.    Introduction**

Presently before the Court are Defendant, LaRoche College's ("LaRoche") Motions for Summary Judgment. Doc. Nos. 32 and 40. On September 8, 2011, pro se Plaintiff, Dr. Flora Mosaka-Wright ("Plaintiff"), filed a Complaint against La Roche, her former employer, alleging: (1) retaliation and (2) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Doc. No. 1-2. On January 17, 2012, Plaintiff filed an Amended Complaint alleging: (1) discrimination based upon national origin in violation of Title VII and (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").[1] Defendant filed a Motion for Summary Judgment contending that it is entitled to judgment as a matter of law because: (1) Plaintiff failed to exhaust her administrative remedies for her age discrimination claim; and (2) Plaintiff's discrimination claim based upon national origin fails as a matter of law. Doc. No. 33. The Court issued a Text Order on July 3, 2012, finding that because of her pro se status, Plaintiff's Amended Complaint supplemented her Original

---

[1] Plaintiff's Amended Complaint did not contain any factual averments or anything apart from the additional numbered claims.

Complaint, rather than supplanting it.  Accordingly, because Defendant only moved for Summary Judgment on Plaintiff's claims in the Amended Complaint, the Court invited either party to file a Motion for Summary Judgment on the claims from Plaintiff's Original Complaint. 7/3/2012 Text Order.  Defendant filed a Motion for Summary Judgment on the claims in Plaintiff's Original Complaint on July 10, 2012.  Doc. No. 40.  Defendant did not file an accompanying brief, but rather, indicated that it relied on its prior brief in support which addressed Plaintiff's claims in the Original Complaint (Doc. No. 33).  After careful consideration of Defendant's Motions for Summary Judgment (Doc. Nos. 32 and 40), brief in support thereof (Doc. No. 33), and Plaintiff's responses in opposition (Doc. Nos. 37 and 43), Defendant's Motions for Summary Judgment (Doc. Nos. 32 and 40) will be GRANTED.

II.     **Statement of Facts**

Plaintiff was hired by LaRoche as the Associate Dean of International Programs in September 2000.  Doc. No. 35-2, 39.  Plaintiff's position with the University was terminated in November 2002.  Id. at 62-63, 74.  When her position as Associate Dean was eliminated, Plaintiff was offered a position as a Visiting Assistant Professor of Academic Affairs.  Doc. No. 35-1, 67.  Plaintiff refused this position because it would have required her to teach as a visiting professor and to continue to perform her duties as an Associate Dean of Academic Affairs for a smaller salary than she had been earning.  Doc. No. 35-2, 71-72.

After speaking to her supervisor, Plaintiff accepted the visiting professor position without any Assistant Dean responsibilities.  Id. at 72.  Plaintiff signed a Faculty Appointment Agreement ("FAA") to serve as a visiting assistant professor from January 1, 2003 through May 15, 2004.  Id.  As a visiting professor, Plaintiff was classified as a "temporary" employee.  Doc.

No. 35-1, 11.  In the fall semester of 2003, Plaintiff's supervisors approved her transition to developing course work instead of teaching an additional course.  Id. at 83-84.  During the same time period, Plaintiff received negative reviews from her students.  Id. at 17.

On or about May 4, 2004, Plaintiff received a second FAA for the period of August 15, 2004 through May 15, 2005, for a greatly reduced salary.  Doc. No. 35-2, 104-05.  Plaintiff hired an attorney who sent a letter to Plaintiff's supervisor (dated June 2, 2004) claiming that the contract was late and should have been for an 18-month period.  Id. at 93, Exhibit 7.  LaRoche's General Counsel responded to the letter.  Id. at 94-98, Exhibit 8.  Beginning in June 2004, Plaintiff began complaining to her supervisor, Dr. Ishiyama, about difficulties she was having with Dr. Ferguson.  Id. at 111-114, 126, 129-30, 137, 143, 147, 151, 157-58, 166-67, 220-21.  Dr. Ishiyama expressed that Plaintiff's contract would end in May of 2005.  Id. at 191.  Plaintiff's position ended with the end of her FAA period.  Doc. No. 32-1, 25.  She filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") on May 9, 2005, alleging discrimination based upon national origin, color, religious creed, and sex and retaliation.  Doc. No. 32-2, 275, 277-78, Dep. Exhibit 21.  On March 30, 2006, Plaintiff, through counsel, filed an Amended Complaint alleging race discrimination and retaliation.  Id. at 278-80, Exhibit 22.

### III.   Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986); *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – i.e., depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Id.

In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

IV. **Discussion**

   a. *Count I of Original Complaint: Retaliation*

Plaintiff's Original Complaint alleges that Defendant engaged in retaliatory action against Plaintiff when Defendant failed to renew her contract because Plaintiff: (1) initially refused to sign a visiting professor contract in November 2002 and (2) retained counsel over the contract dispute for her second contract for her position for August 2004 through May 2005.[2] Doc. 1-2. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show evidence that she: (1) engaged in a protected activity; (2) Defendant, as her employer, took adverse action against her; and (3) there was causal connection between Plaintiff's partaking in the protected activity, and the adverse action taken by Defendant against her. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

Protected activities are separated into two categories: (1) those who participate in the Title VII proceedings, and (2) those who oppose the discrimination made unlawful by Title VII. *Id*. at 341 (citing *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)). Under either category, Plaintiff must reasonably believe, in good faith, that the activity they oppose is unlawful under Title VII. *Id*. (citing *Clark County v. Breeden*, 532 U.S. 268, 271 (2001)).

Plaintiff has not established that she engaged in a protected activity before she learned her contract would not be renewed and therefore, she cannot establish a *prima facie* case of retaliation. Plaintiff claims that she retained counsel to assist her in contract negotiations which resulted in her contract for a full-time faculty position from August 15, 2004 to May 15, 2005.

---

[2] Plaintiff notes that her retaliation claim is "at the root of all complaints against Defendant." Doc. No. 43, ¶ 4.

Doc. No. 1-2, ¶ 7.  Plaintiff's counsel sent a letter to LaRoche dated June 2, 2004.  Doc. No. 1, Exhibit B.  The letter did not refer to any alleged discrimination, but rather, focused on the temporal terms of the contract.  Id.  Therefore, the Court finds that retaining counsel and his subsequent letter to Defendant does not constitute a protected activity because the absence of any allegations of discrimination would not have put Defendant on notice of any claim for discrimination.  *See Barber v. CSX Distr. Servs.*, 68 F.3d 694, 702 (3d. Cir. 1995) (" . . . Barber's letter to Human Resources complains about unfair treatment in general and expresses his dissatisfaction with the fact that someone else was awarded the position, but it does not specifically complain about age discrimination.  Accordingly, the letter does not constitute the requisite "protected  conduct" for a *prima facie* case of retaliation.")

Plaintiff's only other claim that could be perceived as protected activity is her filing a charge with the EEOC.  However, it is clear from Plaintiff's Complaint that this filing occurred after she learned her contract would not be renewed.  Specifically, Plaintiff learned that her contract would not be renewed "around the end of April 2005" and filed her Complaint with the PHRC "on or about the beginning of May 2005."  Doc. No. 1-2, ¶¶ 9, 11.  Therefore, Plaintiff's filing with the PHRC could not have been a reason Defendant did not renew her contract and accordingly, Plaintiff cannot demonstrate a *prima facie* case of retaliation.  As such, Defendant's Motion for Summary Judgment on Count I of Plaintiff's Original Complaint will be GRANTED.

### b. *Count II of Original Complaint: Race Discrimination*

To establish a *prima facie* case of race discrimination under Title VII, Plaintiff must show that she: (1) is a member of a protected class; (2) she was qualified for the position; (3) was

terminated; and (4) the termination gave rise to an inference of discrimination based on race. *Tucker v. Thomas Jefferson Univ.*, 2012 U.S. App. LEXIS 11467, (3d Cir. April 1, 2012).

In support of her claim for discrimination based upon race, Plaintiff alleges that: (1) Dr. Ferguson made the following statement to Plaintiff during the Spring semester of 2004:

> Come to this place on a Sunday, the whole place looks like in the projects with all these blacks sitting around doing nothing. They are used to these entitlements, they should be sitting somewhere and reading a book to an old age person at an old age home.

(2) this is only one example of Dr. Ferguson's attitude toward Plaintiff and other people of color; (3) when Plaintiff confronted Dr. Ferguson about the comment, Dr. Ferguson replied by saying Dr. Ishiyama felt the same way; (4) students reported to Plaintiff that Dr. Ferguson referred to her as "princess," and this had racial connotations; (4) a student wrote to the President of LaRoche to express the racism displayed towards Plaintiff (according to Plaintiff's response, this racism was displayed by students, which does not support her position, Doc. No. 43, ¶ 60), and Plaintiff was rebuked by Dr. Ferguson for initiating it and; (5) Bill Pearce (marketing professor) "vehemently talked about his hatred for black people and how he had no place for them in marketing, except in situations where he was to maximize his profits" (the Court notes that there are no allegations that Pearce had any role in LaRoche's decision not to renew Plaintiff's contract).

Despite Plaintiff's protestations, no evidence has been produced at this stage to support her claims of race discrimination or to rebut Defendant's offered legitimate non-discriminatory reason for her firing (poor student reviews).  Indeed, in her response, Plaintiff concedes that Dr. Ishiyama told her that her performance reviews were "the worst students (sic) evaluation[s] he had ever read in his whole life." Doc. No. 43, ¶ 24.  There has been no evidence to rebut these

evaluations as a legitimate non-discriminatory reason not to renew Plaintiff's contract with LaRoche.  Therefore, at this stage, the Court finds that a reasonable juror could not find for Plaintiff on her claim for race discrimination and will GRANT summary judgment for Defendant on this claim.  *See Allen v. National R.R. Passenger Corp. ("Amtrak")*, 228 F. App'x. 144, 147 n. 3 (3d Cir. 2007) ("We recognize that the Plaintiffs 'deny' many of these facts in their pleading and in their briefing, but at the summary judgment stage, we look beyond the pleadings to whether there is actual evidence . . . .").

*c. Count I of Amended Complaint: Discrimination Based Upon National Origin*

Plaintiff has the burden of establishing a *prima facie* case for discrimination based upon national origin by proving that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances that give rise to an inference of unlawful discrimination.  *Sarullo v. USPS*, 352 F.3d 789, 797 (3d Cir. 2003); *Jones v. School Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

Plaintiff has failed to demonstrate an inference of unlawful discrimination based upon her national origin.  Her Complaint and responses to the Motions for Summary Judgment do not contain any factual averments or any supporting evidence that could be perceived by a reasonable juror to give rise to an inference of discrimination based upon national origin.  Therefore, Defendant's Motion for Summary Judgment will be GRANTED for Plaintiff's claim of discrimination based upon national origin.

### d. Count II: Age Discrimination in Violation of the ADEA

Defendant contends that Plaintiff's claim for age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") fails because she did not exhaust her administrative remedies. Doc. No. 33, 2. To initiate an employment discrimination claim in a Federal District Court, a Plaintiff must exhaust her administrative remedies by filing a claim with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice or within 300 days if the proceedings were initiated with a state or local agency. *Alexander v. Gardner-Denver*, 415 U.S. 36, 47 (1974); 29 U.S.C. § 626(d)(1). Claims within a Plaintiff's Complaint must have been "fairly within the scope of the prior EEOC Complaint" or the agency's investigation. *Antol v. Perry*, 82 F.3d 1291, 1295 (3d. Cir. 1996).

Plaintiff's EEOC Charge did not contain any allegations of age discrimination and could not have fairly put Defendant on notice of such a claim. Therefore, Defendant's Motion for Summary Judgment as to Count II of the Amended Complaint, Age Discrimination in Violation of the ADEA, will be GRANTED.

**V.     Conclusion**

For the foregoing reasons, Defendant's Motions for Summary Judgment (Doc. Nos. 32 and 40) will be GRANTED.

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties

Dr. Flora Mosaka-Wright
2227 Teal Trace
Pittsburgh, PA 15237
PRO SE PLAINTIFF